| ADVERSARY PROCEEDING COVER SHEET | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Ron Ratliff Cattle Co., Inc. | **DEFENDANTS**<br>Bert Edgar Smith, IV and Rowdy Livestock, LLC |
| **ATTORNEYS** (Firm Name, Address, and Phone No.)<br>Dunham Hildebrand Payne Waldron, PLLC<br>9020 Overlook Blvd, Suite 316, Brentwood, TN 37027<br>(629) 777-6519 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>X Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>X Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other – Recipient/Transferee<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE BRIEF STATEMENT, INCLUDING U.S. STATUTES INVOLVED)
Plaintiff brings this cause of action for an order and judgment declaring Defendants' debt non-dischargeable, and for related relief. Predicate federal statutes: 11 U.S.C. § 523 and 28 U.S.C. § 1738.

**NATURE OF SUIT**
(Number up to 5 boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ Recovery of money/property- §542 turnover of property<br>☐ Recovery of money/property- §547 preference<br>☐ Recovery of money/property- §548 fraudulent transfer<br>☐ Recovery of money/property- other | **FRBP 7001(6) – Dischargeability**<br>☐ Dischargeability- §523(a)(5), domestic support<br>☐ Dischargeability- §523(a)(6), willful and malicious injury<br>☐ Dischargeability- §523(a)(8), student loan<br>☐ Dischargeability- §523(a)(15), divorce or separation<br> obligation<br>☐ Dischargeability – other |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☐ Validity, priority or extent of lien or other interest in<br> property | **FRBP 7001(7) – Injunctive Relief**<br>☐ Injunctive relief – imposition of stay<br>☐ Injunctive relief - other |
| **FRBP 7001(3) – Approval of Sale of Property**<br>☐ Approval of sale of property of estate and co-<br> owner - §363(h) | **FRBP 7001(8) Subordination of Claim or Interest**<br>☐ Subordination of claim or interest |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>☐ Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(9) Declaratory Judgment**<br>☐ Declaratory judgment |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ Revocation of confirmation | **FRBP 7001(10) Determination of Removed Action**<br>☐ Determination of removed claim or cause |
| **FRBP 7001(6) – Dischargeability**<br>☐ Dischargeability- §523(a)(1),(14),(14A) priority tax<br>[1] Dischargeability- §523(a)(2), false pretenses, false<br> representation, actual fraud<br>☐ Dischargeability- §523(a)(4), fraud as fiduciary,<br> embezzlement, larceny | **Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>☐ Other, *e.g.* actions that would have been in state court if<br> unrelated to bankruptcy case |
| ☐ Check if case involves a substantive issue of state law | ☐ Check if asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Bert Edgar Smith, IV, and Rowdy Livestock, LLC | BANKRUPTCY CASE NO.<br>25-01518 and 25-01531 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Middle District of Tennessee | DIVISION OFFICE<br>Columbia | NAME OF JUDGE<br>Charles M. Walker |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| DATE<br>July 21, 2025 | ATTORNEY (OR PLAINTIFF) NAME AND SIGNATURE<br>Gray Waldron: */s/ Gray Waldron* | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 1:25-bk-01518 |
| BERT EDGAR SMITH, IV, | ) | Chapter 12 |
| | ) | Judge Charles M. Walker |
| Debtor. | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 1:25-bk-01531 |
| ROWDY LIVESTOCK, LLC, | ) | Chapter 12 |
| | ) | Judge Charles M. Walker |
| Debtor. | ) | |

| | | |
|---|---|---|
| RON RATLIFF CATTLE CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Case No. _____ |
| | ) | |
| BERT EDGAR SMITH, IV, and | ) | |
| ROWDY LIVESTOCK, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT

Plaintiff, Ron Ratliff Cattle Co., Inc. ("***Plaintiff***" or "***RRCC***"), files this complaint against Bert Edgar Smith, IV ("***Defendant Smith***") and Rowdy Livestock, LLC ("***Defendant Rowdy***", and together with Defendant Smith, the "***Defendants***").

## SUMMARY OF ACTION

1.      This adversary proceeding seeks a declaration that the Plaintiff's claims against the Defendants are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

2.      Plaintiff's claims for fraudulent misrepresentation were previously litigated and decided in the Fourth Judicial District Court for the State of Kansas, Anderson County (the

"**_Kansas Court_**"), Case No. AN-2023-CV-30001 (the "**_Kansas Lawsuit_**") resulting in an award of $3,567,411.88, jointly and severally against the Defendants, on March 28, 2024 (the "**_Kansas Judgment_**"). A copy of the Kansas Judgment is attached hereto as **Exhibit A**.

3.      On July 10, 2024, the Kansas Court awarded RRCC its attorney fees of $59,669.00 and expenses of $7,471.27, adding a total amount of $67,140.27 to the Kansas Judgment. The Kansas Court granted further leave for RRCC to file a future motion for attorney's fees it may incur in pursuit of collection (the "**_Attorney Fee and Expenses Order_**"). A copy of the Attorney Fee and Expenses Order is attached hereto as **Exhibit B**.

4.      On January 21, 2025, the Kansas Judgment was domesticated in Tennessee (the "**_Tennessee Domesticated Judgment_**"). A copy of the Tennessee Domesticated Judgment is attached hereto as **Exhibit C**.

## PARTIES

5.      RRCC is a Kansas for-profit corporation principally located in Garnett, Anderson County, Kansas.

6.      Defendant Smith is an individual residing in Tennessee. At the time he filed his Chapter 12 bankruptcy case, his primary residence was stated as 2792 Gold Road, Lewisburg, TN, 37091. He is the Debtor in bankruptcy case number 1:25-bk-01518.

7.      Defendant Rowdy is a Tennessee limited liability company. It is the Debtor in bankruptcy case number 1:25-bk-01531. Defendant Rowdy's sole owner, member, and registered agent is Defendant Smith.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523.

9. Venue is proper pursuant to 28 U.S.C. § 1409(a).

10. This is a core proceeding under 28 U.S.C. § 157(b)(2). This adversary proceeding arises in the above-captioned Chapter 12 bankruptcy cases.

11. This action is filed within the time permitted by applicable law.

**FACTUAL BASIS FOR CLAIMS OF RELIEF**

12. Plaintiff is a registered livestock dealer, which frequently acts as an "order buyer" for its clients. As an "order buyer," the Plaintiff processes client requests for quantities of cattle of various sexes, weights, and breeds; the Plaintiff then sources and resells the cattle to its clients, for which it accepts a payment of the purchase price of the livestock plus a commission.

13. In August of 2022, the Defendants began a business relationship with Plaintiff, whereunder Plaintiff was acting as an "order buyer" for Defendants. Under this arrangement, Plaintiff was to seek out and purchase, via public auction, quantities of cattle that met the Defendants' specifications. In exchange, the Defendants were to issue payments—primarily via checks and wire transfers—to Plaintiff for the standard rate of the value of the cattle purchased plus a commission.

14. In addition to using its own money to purchase cattle for the Defendants at public auction, the Plaintiff also sold some of its own cattle to Defendants. These were cattle that Plaintiff had bought for itself to be sold later when they became part of a larger group. Some were purchased by Defendants before a larger group could be made, while others were purchased after formation of a group.

15. Throughout the entirety of this business relationship, all transactions and communications went through Defendant Smith on behalf of the Defendants. Defendant Smith

was the sole point of contact for the Defendants in this matter and initiated or signed all forms of payment sent to the Plaintiff.

16.     Although the business relationship between the parties lasted only a few months, over the course of August – December 2022, the Plaintiff sold thousands of head of cattle to the Defendants, nearly half of which the Defendants failed to pay for.

17.     Over 5,000 head of cattle—a value of over $4,500,000—was purchased and sold to the Defendants.

18.     The Defendants received delivery and possession of all head of cattle yet only paid $2,587,894.23 therefor.

19.     Defendants took delivery of most of the cattle associated with the invoices from Plaintiff by sending an agent or employee to Plaintiff's location in Garnett, Kansas. Defendants took delivery of the cattle associated with public auction yard sales receipts at the public auction yard from which Plaintiff originally purchased the animals.

20.     Defendants did not return any cattle.

21.     As later learned by Plaintiff, the Defendants have been involved in numerous other lawsuits for issues and schemes like those Plaintiff encountered, and at the beginning of the business relationship with Plaintiff, the Defendants owed millions of dollars in judgments and settlements for previous claims against them, with millions more in claims in pending litigation.

22.     The Defendants were not financially able to settle the debts owed from their past business dealings prior to beginning a business relationship with Plaintiff. Yet, the Defendants proceeded to buy livestock from the Plaintiff knowing they were unable to pay for the same.

23.     The Defendants made numerous misrepresentations to the Plaintiff, including regarding their ability and intent to pay for cattle, and whether they paid for cattle already purchased.

24.     Despite their knowing inability to pay, the Defendants continued to assure Plaintiff that they would be able to pay for the cattle they had purchased.

25.     The Defendants misrepresented the status of prior payments to Plaintiff, affirmatively stating that such payments had cleared from their online banking information when, in fact, such payments had not cleared and were later retuned for non-sufficient funds.

26.     Plaintiff, relying on these misrepresentations, maintained the business relationship with the Defendants, acting as an "order buyer" until December 2022.

27.     Plaintiff, relying on Defendants' misrepresentations, sold over 5,000 head of cattle—valued at over $4.5 million—to the Defendants.

28.     Over the course of the business relationship, the Defendants caused six bad checks—valued at $1,372,876.37—to be issued to Plaintiff as payment for the livestock purchased and delivered. The Defendants failed to replace any of those checks.

29.     The Defendants also failed to issue payment for the $512,203.18 worth of livestock purchased directly from Plaintiff.

30.     Over the course of the relationship, the Defendants made strategic payments to Plaintiff; urged the Plaintiff to hold checks; misrepresented the ability and intent to make payment; and falsely made assurances that they had paid for certain orders of cattle. As a result, Plaintiff continued the relationship with the Defendants for a short period, during which Defendants continued to purchase and receive delivery of additional cattle without payment.

31.     When the misrepresentations became apparent, Plaintiff ended its business relationship with the Defendant on December 4, 2022.

32.     Despite Plaintiff's continual demands, the Defendants neither made payment nor returned the cattle they failed to pay for.

33.     In pursuit of the Defendants' outstanding payments, Plaintiff filed the Kansas Lawsuit on October 13, 2023.

34.     On February 22, 2024, Plaintiff filed a motion for summary judgment in the Kansas Court, supporting the factual allegations with sworn testimony and providing the legal basis for relief on all causes of action with a supporting memorandum applying Kansas law to the facts.

35.     On March 28, 2024, the Kansas Court entered the Kansas Judgment, which granted summary judgment to Plaintiff with detailed findings of fact and conclusions of law. See **Ex. A**.

36.     In the Kansas Judgment, the Kansas Court found as a matter of fact that:

   a.   The Defendants failed to make payment for numerous purchases of cattle.

   b.   The Defendants had written several bad checks to Plaintiff.

   c.   The Defendants made numerous misrepresentations to Plaintiff regarding both the ability to pay for cattle and whether they had paid for cattle already purchased.

   d.   The Defendants also made repeated assurances that would pay for cattle already purchased.

   e.   Plaintiff relied on those representations to initially sell cattle to the Defendants and to continue selling cattle to the Defendants throughout the course of the business relationship.

   f.   Based on the value of the bad checks and unpaid invoices, the Defendants owed a total of $1,957,438.55 to Plaintiff.

37.     With its factual findings, the Kansas Court legally concluded that Plaintiff was entitled to a total of $3,567,411.88 plus attorney fees from the Defendants. This amount was based

on the value of all of the payments owed to Plaintiff, with interest of ten percent (10%) per annum, and all statutory damages and fees awarded under K.S.A. 60-2610.

38.     On July 10, 2024, the Kansas Court entered the Attorney Fee and Expenses Order, thereby adding $67,140.27 to the Kansas Judgment for reasonable attorney's fees and expenses.

39.     On January 21, 2025, the Tennessee Domesticated Judgment was entered by the Circuit Court for Marshall County, Tennessee, thereby domesticating the Kansas judgment against the Plaintiff in Tennessee. [1] See **Ex. C**.

40.     The Defendants had a full and fair opportunity over the course of the proceedings in Kansas to litigate all issues therein, including but not limited to the amounts claimed by the Plaintiff and the underlying factual findings establishing the Plaintiff's claims for fraudulent misrepresentation.

41.     Both the Kansas Judgment and the Tennessee Domesticated Judgment are valid, final judgments.

42.     The parties to the Kansas Lawsuit are the same parties to this adversary proceeding.

43.     The misrepresentation claims that were fully litigated and decided in the Kansas Lawsuit, as evidenced by the Kansas Judgment, are identical to those asserted by Plaintiff in this adversary proceeding under 11 U.S.C. § 523(a)(2).

44.     The Tennessee Domesticated Judgment either directly, or implicitly, is based on the Full Faith and Credit Clause found in Article IV, Section 1 of the United States Constitution. Thus, the Tennessee Domesticated Judgment establishes the validity and preclusive effect of the Kansas Judgment to be given by another court.

---

[1] Following hearing on December 5, 2024, the Tennessee Court entered summary judgment enrolling the Kansas Judgment on January 21, 2025, which it later amended on April 14, 2025. The amended order expressly states that it corrects a clerical error and is retroactive to January 21, 2025.

45.     The Kansas Judgment and the Tennessee Domesticated Judgment are entitled to full faith and credit and preclusive effect as to all issues of fact and law therein by this Court pursuant to the doctrine of collateral estoppel and 28 U.S.C. § 1738.

## **GROUNDS FOR RELIEF**

46.     Pursuant to 28 U.S.C. § 1738, "records and judicial proceedings of any court of any state ... or copies thereof, shall be proved or admitted into other courts within the United States" and, if authenticated as provided therein, "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

47.     Under Kansas law, issue preclusion—otherwise referred to as collateral estoppel— "prevents a second litigation of the same issue between the same parties, *even when raised in a different claim or cause of action." **In re Application of Fleet for Relief from a Tax Grievance in Shawnee Cnty*., 272 P.3d 583, 589 (Kan. 2012).

48.     Three elements are required for issue preclusion: (1) a prior judgment on the merits that determined the parties' rights and liabilities on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the same parties or parties in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. *Id.* at 589-90 (citing *Venters v. Sellers*, 261 P.3d 538 (Kan. 2011)).

49.     In this case, the Kansas judgment against the Defendants—which was later domesticated in Tennessee—meets each element:

    a.  It determined the parties' rights and liabilities on the issue of misrepresentation based on the ultimate facts as disclosed by the pleadings filed by the Plaintiff (complaint, summary judgment motion, and supporting memoranda), and the detailed judgment;

b.   The parties to this adversary pleading are the same as those in both the Kansas Judgment and Tennessee Domesticated Judgment; and

c.   The relevant issues litigated in both the Kansas Lawsuit—specifically, the Defendants' misrepresentations during the course of the business relationship with the Plaintiff—was determined and necessary to support the judgment.

50.     The Kansas Court found the Defendants liable for fraud, citing "actionable includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or reckless disregard for the truth, where another party justifiably relies on the statement and acts to his injury and damage." *Nordstrom v. Miller,* 605 P.2d 545, 551-52 (Kan. 1980) and specifically determined that,

> The Defendants were well aware of the fact that they did not have the necessary funds available to continue purchasing cattle from the Plaintiff. However, the Defendants continued to place orders, make offers for groups of livestock, and take delivery of animals they said they would purchase from the Plaintiff, all while assuring the Plaintiff that they would be able to pay for these animals. The Plaintiff justifiably relied on Defendants' representations regarding their ability to pay for the cattle they were purchasing.
>
> The facts in this case show the Defendants continually misrepresented their financial situation to the Plaintiff, writing bad checks totaling millions of dollars and continuing to order more cattle even after checks had bounced, all the while asking the Plaintiff to hold on to checks before depositing them because the Defendants knew they would never clear. The Defendants have surely capitalized on the possession of cattle related to the numerous back checks they wrote and the cattle they never paid for because they have likely resold the animals and appreciated the income on livestock for which they never paid. This is a fraudulent misrepresentation under Kansas law.

Ex. A, Kansas Judgment, pp. 22-23.

51.     The Kansas Court further concluded that the Defendants' intended to defraud Plaintiff and supported the conclusion with circumstantial evidence: "the plethora of other legal action against Defendants for similar issues reveals that this is not the first time the Defendants have done something like this." See *Id.* at p. 23-25 (identifying and detailing prior instances).

52.     Ultimately, with respect to the fraudulent misrepresentation claims, the Kansas

Judgment states,

> Accordingly, it is determined that the Defendants, Bert E. Smith, IV and
> Rowdy Livestock, LLC, committed fraud on the Plaintiff by making
> fraudulent misrepresentations to the Plaintiff that induced the Plaintiff into
> selling the Defendants millions of dollars' worth of cattle for which they
> have not paid. As a result of this fraud, the Defendants are liable for the
> entirety of the judgment in this matter, including the value of all the
> payments owed to the Plaintiff, with interest of ten percent (10%) per
> annum, and all statutory damages and fees awarded under K.S.A. 60-2610,
> a total of $,3,567,411.88, plus attorney fees.

*Id.* at p. 26.

53.     Pursuant to 11 U.S.C. § 523(a)(2), the debtor-Defendants are not entitled to a

discharge from any debt for "money, property, services, or an extension, renewal, or refinancing

of credit, to the extent obtained by … false pretenses, a false representation or actual fraud."

54.     To the extent the Tennessee Domestication Judgment triggers application of

Tennessee's preclusion law, the judgment is still preclusively non-dischargeable.

55.     The elements of the Tennessee's civil tort of fraud and "fraud" as defined by 11

U.S.C. § 523(a)(2)(A) are "fundamentally the same." See *In re Bursack*, 65 F.3d 51, 53 (6th

Cir.1995) (agreeing with bankruptcy court that elements of §523(a)(2)(A) are "virtually identical"

to elements of Tennessee's fraud cause of action).

56.     Therefore, the doctrine of issue preclusion—whether applied under Kansas law or

Tennessee law—bars relitigating the issues of whether the Defendants are liable for fraud and the

amount of liability therefor.

57.     Based upon the acts of the Defendants, as determined by the Kansas Court,

application of law and issue preclusion, the debt owed by Defendants to Plaintiff should be

declared non-dischargable pursuant to 11 U.S.C. § 523(a)(2).

## RELIEF REQUESTED

**WHEREFORE**, premises considered, the Plaintiff respectfully prays for the Court to enter judgment in this matter and grant the following relief:

1. Declare that the Kansas Judgment, entered in favor of the Plaintiff and against the Defendants, shall be given preclusive effect pursuant to the Full Faith and Credit Statute, 28 U.S.C. § 1738 and the doctrine of collateral estoppel;

2. Declare that the Tennessee Domestication Judgment, entered in favor of Plaintiff and against the Defendants, shall be given preclusive effect pursuant to the Full Faith and Credit Statute, 28 U.S.C. § 1738 and the doctrine of collateral estoppel;

3. Declare that Plaintiff's claims for misrepresentation, in the amounts that remain due and owing under the Kansas Judgment or Tennessee Domestication Judgment, inclusive of all costs and attorney's fees, are excepted from any discharge that either Defendant may obtain;

4. Declaring that the Plaintiff's claims for misrepresentation are non-dischargeable for all purposes in this case or in any future case filed by the Defendants;

5. That all costs of this matter, and all reasonable attorney's fees incurred by the Plaintiff in pursuing this matter, be taxed to the Defendants, jointly and severally; and

6. For such other and further relief as this Court shall deem appropriate.

Respectfully submitted,


/s/ Gray Waldron
GRAY WALDRON
DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
9020 Overlook Boulevard, Suite 316
Brentwood, TN 37207
629.777.6519
gray@dhnashville.com
*Counsel for the Plaintiff*

# Exhibit A



| | |
|---|---|
| **Court:** | Anderson County District Court |
| **Case Number:** | AN-2023-CV-300001 |
| **Case Title:** | Ron Ratliff Cattle Co., INc. vs. Burt E Smith, IV & Rowdy Livestock, LLC |
| **Type:** | ORD: Summary Judgment Order Granting Plaintiff's Motion for Summary Judgment |

SO ORDERED,

_Eric Godderz_

_____

/s/ Honorable Eric Godderz, District
Court Judge

Electronically signed on 2024-03-28 09:12:59          page 1 of 32

STATE OF KANSAS } SS
ANDERSON COUNTY
I hereby certify the foregoing is true,
correct and full copy of the instrument
herewith set out as appears of record in
the District Court office of Anderson
County, Kansas
Date 4-4-2024
Clerk Deputy of District Court

IN THE FOURTH JUDICIAL DISTRICT
DISTRICT COURT, ANDERSON COUNTY, KANSAS

| | | |
|---|---|---|
| RON RATLIFF CATTLE CO., INC,<br>a Kansas for profit corporation, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. AN-2023-CV-300001 |
| | ) | |
| BERT E. SMITH, IV, as an individual<br>and as a member of ROWDY<br>LIVESTOCK, LLC, and<br>ROWDY LIVESTOCK, LLC,<br>a Tennessee limited liability company, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

THIS MATTER has come before the Court on the *Plaintiff's Motion Summary Judgment*.

Having considered the motion and the supporting brief, reviewed the record herein, and being

otherwise fully advised, this Court FINDS and ORDERS as follows:

### FINDINGS OF FACT

**A.    Case proceedings.**

1.    On October 13, 2023, the Plaintiff filed its Petition with this Court.

2.    Service was made on the Defendants on October 31, 2023.

3.    The Defendants were required to answer the Plaintiff's Petition no later than November

21, 2023; Defendants failed to file an answer or otherwise appeared before this Court.

4.    As a result, the Defendants are in default pursuant to K.S.A. 60-255.

**B.  Background on the Parties and their business relationship.**

5.      The Plaintiff, Ron Ratliff Cattle Co., Inc., is a Kansas for-profit corporation that has its

        headquarters in Garnett, Anderson County, Kansas.

6.      Ron Ratliff is the primary owner and operator of Ron Ratliff Cattle Co., Inc.

7.      Most of the checks issued as payment by the Defendants in this matter deposited by the

        Plaintiff with Farmers State Bank in Garnett, Kansas.

8.      Ron Ratliff Cattle Co., Inc. is an entity which is in the business of buying and selling

        livestock and is registered as a livestock dealer with the Packers and Stockyards Division

        of the United States Department of Agriculture pursuant to Title III of the Packers and

        Stockyards Act.

9.      Plaintiff's general business activities include acting as an "order buyer," which is where a

        client requests a specific number of livestock that meet certain specifications (generally

        the animals must be of a certain sex, weight, and breed) and fall within a specified price

        range. Plaintiff's job as an order buyer is to source these animals for a client and in

        exchange for its services, Plaintiff receives a commission or fee, frequently based on the

        total value of the animals purchased for the client. When acting as an order buyer,

        Plaintiff typically buys the cattle from a public auction yard or private individual, paying

        for them with its own funds, then resells the animals to the client for the purchase price

        plus commission.

10.     Alternatively, Plaintiff also buys several small groups of livestock that are similar in type

        and kind, accumulating these animals at its place of business to make one large uniform

        group. By doing this the Plaintiff is able to buy cattle at a discount and improve their

value by creating a larger group that can be shipped to other locations more economically.

11.     Defendant Bert E. Smith, IV is a resident of Lewisburg, Tennessee and is known to be the sole owner/member, manager, and registered agent of Defendant Rowdy Livestock, LLC, a Tennessee Limited Liability Company with its principal address in Lewisburg, Tennessee.

12.     In August of 2022 the Plaintiff and the Defendants began a business relationship where Plaintiff agreed to act as an order buyer for Defendants, buying specific types of cattle to meet the needs of the Defendants. Throughout the entirety of this business relationship, all transactions and communications went through Defendant Bert E. Smith, IV on behalf of the Defendants; Mr. Smith was the sole point of contact for the Defendants in this matter and initiated or signed all forms of payment sent to the Plaintiff.

13.     The Defendants placed orders with the Plaintiff for specific livestock, Plaintiff attended various public auctions looking for cattle that fit the orders, purchased said cattle with its own money, then resold the cattle to the Defendants. In exchange for the cattle sold to them, Defendants were to issue payment to the Plaintiff for the value of the animals plus a commission; Defendants did just that for many of the cattle, sending checks or wires to the Plaintiff from Rowdy Livestock, LLC. All checks were signed by Mr. Smith and all wires were initiated at his direction.

14.     The Plaintiff also sold some of its own cattle to Defendants; these were cattle that Plaintiff had bought for itself to be sold at a later date when they became part of a larger group.

15. Defendants took delivery of several groups of cattle at Plaintiff's place of business in Garnett, Kansas by sending an agent or employee to that location..

16. In December of 2022, the Plaintiff ceased selling any cattle to the Defendants because the Defendants had failed to make proper payment for numerous purchases of cattle and the Defendants had written several bad checks to the Plaintiff.

17. Over the course of the business relationship between the Parties, the Plaintiff sold over 5,000 head of cattle for a total value of over $4.5 million to the Defendants.

18. The Defendants received delivery and possession of these 5,000 head of cattle, yet the Plaintiff has only received payment for $2,587,894.23 worth of the cattle purchased.

19. Defendants have not returned any of the cattle.

   **C.    Transactions throughout the course of the business relationship.**

20. The first transaction between the Parties occurred in early August 2022, when the Plaintiff sold Mr. Smith seven (7) head of cattle.

21. The next transaction occurred on August 11, 2022, when Mr. Smith sent the Plaintiff an order for various types of cattle. That same day, Plaintiff sold the Defendants 46 head of cattle for $42,597.13. Mr. Smith sent the Plaintiff check #4899 to pay for this transaction, but on August 23, 2022, this check was declined for Non-Sufficient Funds. Plaintiff informed Mr. Smith of the declined check on September 9, 2022, and Mr. Smith later replaced check #4899 with check #4976, dated September 12, 2022, which cleared the bank on September 13, 2022.

22.     From August 13, 2022, to August 27, 2022, Plaintiff made five more transactions with the Defendants, selling them 167 head of cattle valuing $513,920.38; all of these transactions were paid for by checks sent by Mr. Smith without any issues.

23.     On September 1, 2022, Plaintiff sold the Defendants 160 head of cattle for a value of $155,198.52. Mr. Smith sent check #4964 to the Plaintiff for this amount; the check was placed on "Uncollect Hold" on September 14, 2022, but did eventually clear.

24.     The next transaction on September 3, 2022, for $50321.05 took place without issue.

25.     On September 8, 2022, the Plaintiff sold the Defendants 287 head of cattle for $279,313.09. As payment for these cattle, Mr. Smith originally sent the Plaintiff check #4992 for the amount above. This check was declined on September 21, 2022, and again on September 27, 2022, for Non-Sufficient Funds. Mr. Smith replaced this bad check with wires sent on September 30, 2022, and October 6, 2022, which together covered the amount owed on the bad check.

26.     From September 10, 2022, to September 17, 2022, the Plaintiff made four transactions with the Defendants, selling 546 head of cattle for a value of $513,813.81, with little issue and received good payment for all of them.

27.     On September 19, 2022, Plaintiff sold the Defendants 76 head of cattle for $84,705.41. Mr. Smith sent check #5024 to pay the balance owed on this transaction, but on October 5, 2022, this check was returned for Non-Sufficient Funds. Mr. Smith replaced check #5024 on October 12, 2022, with a wire payment.

28.     On September 22, 2022, Plaintiff sold the Defendants 194 head of cattle for $189,879.43. Mr. Smith sent check #5032 with for this amount, but the check was returned for Non-

Sufficient Funds on October 6, 2022. Mr. Smith later replaced this check with a wire payment on October 7, 2022.

29.     Another transaction occurred on September 22, 2022, where the Plaintiff sold the Defendants five (5) head of cattle for $1,426; Mr. Smith sent check #5033 as payment for these animals and the check cleared on September 30, 2022.

30.     On September 24, 2022, the Plaintiff sold the Defendants 222 head for $176,958.36. Mr. Smith sent check #5034 to pay for this transaction, but that check was returned for Non-Sufficient Funds on October 7, 2022. A wire covering this transaction was later sent on October 20, 2022, by Mr. Smith.

31.     On September 29, 2022, the Defendants purchased 248 head of cattle from the Plaintiff for $209,931.53. Mr. Smith sent check #5061 to pay for this transaction, which was deposited by the Plaintiff on October 13, 2022, but that check was returned for Non-Sufficient Funds on October 19, 2022. The Plaintiff called Mr. Smith shortly after learning that this check had bounced to inform the Defendants that their payment had been declined. Defendants have not replaced this check or otherwise paid for the cattle they purchased in this transaction; however, they did take possession of the animals and have not returned them.

32.     On September 30, 2022, the Plaintiff made two transactions with the Defendants, one for 46 head at a value of $52,877.00, and one for 150 head at a value of $102,430.00. Mr. Smith sent check # 5052 and check #5057 to cover the two transactions respectively; both checks cleared. The Defendants took delivery of both groups of cattle at Plaintiff's place of business in Garnett, Kansas.

33. On October 1, 2022, the Plaintiff sold Defendants 161 head of cattle for $156,330.38 and 96 head of cattle for $88,168.23. Mr. Smith sent check #5062 to pay for the 161 head, but the check was returned for Non-Sufficient Funds on October 19, 2022. This check was later replaced on October 27, 2022, when Mr. Smith sent a wire for the same amount. To pay for the other 96 head, Mr. Smith sent check #5063 which cleared the bank on October 13, 2022.

34. On October 3, 2022, two transactions occurred between the Parties, neither of which have been paid for by the Defendants. The first transaction was for 74 head of cattle at $70,841.65; the Defendants took delivery of these cattle at Plaintiff's place of business in Garnett, Kansas. The second transaction was also for 74 head, but a value of $69,907.05. Defendants have failed to issue payment of any kind for the cattle they purchased in these two transactions; however, they did take possession of the animals and have not returned them.

35. On October 6, 2022, the Plaintiff sold Defendants 165 head of cattle for $203,982.25. Mr. Smith sent check #5085 to pay for this transaction, but the check was returned for Non-Sufficient Funds on November 10, 2022. When the Plaintiff learned that the latest check had bounced, he once again immediately informed Mr. Smith. Defendants have not replaced this check or otherwise paid for the cattle they purchased in this transaction; however, they did take possession of the animals and have not returned them.

36. On October 8, 2022, the Plaintiff sold the Defendants 13 head of cattle for $11,417.64. Mr. Smith sent check #5100 to pay for this transaction and it cleared the bank on October 31, 2022.

37.     On October 13, 2022, the Plaintiff sold the Defendants 245 head of cattle for
        $224,251.98. Mr. Smith sent check #5101 to pay for this transaction; Plaintiff deposited
        this check on November 21, 2022, but the check was returned for Non-Sufficient funds
        on November 23, 2022. Defendants have not replaced this check or otherwise paid for the
        cattle they purchased in this transaction; however, they did take possession of the animals
        and have not returned them.

38.     On October 15, 2022, the Defendants purchased nine (9) head of cattle from the Plaintiff
        for $8,156.53. Mr. Smith sent check #5122 to pay for this transaction and it cleared the
        bank on October 31, 2022.

39.     On October 17, 2022, Defendants purchased 71 head of cattle for $69,779.37. Defendants
        took delivery of these cattle at Plaintiff's place of business in Garnett, Kansas. The
        Defendants paid for this transaction via wire on October 25, 2022.

40.     On October 20, 2022, the Defendants purchased 363 head of cattle from the Plaintiff for
        $319,256.49. Mr. Smith sent check #5124 to pay for this transaction, but the check was
        returned for Non-Sufficient funds on February 23, 2023; the check was then run through
        again and the Defendants stopped payment on the check on February 27, 2022.
        Defendants have not replaced this check or otherwise paid for the cattle they purchased in
        this transaction; however, they did take possession of the animals and have not returned
        them.

41.     On October 22, 2022, the Plaintiff sold the Defendants 18 head of cattle for $11,614.34.
        Mr. Smith sent check #5121 to pay for this transaction and it cleared the bank on October
        31, 2022.

42.    On October 27, 2022, Defendants purchased 153 head of cattle from the Plaintiff for

$124,729.81. Mr. Smith sent check #5150 to pay for this transaction and it cleared the

bank on November 14, 2022.

43.    On November 3, 2022, Plaintiff sold the Defendants 204 head of cattle for $193,598.37.

Mr. Smith sent check #5175 to pay for this transaction; Plaintiff deposited this check on

November 21, 2022, but the check was returned for Non-Sufficient funds on November

28, 2022. Defendants have not replaced this check or otherwise paid for the cattle they

purchased in this transaction; however, they did take possession of the animals and have

not returned them.

44.    On November 5, 2022, Plaintiff sold the Defendants another 86 head of cattle for

$66,793.11. Mr. Smith sent check #5173 to pay for this transaction and it cleared the

bank on November 16, 2022.

45.    On November 9, 2022, Defendants purchased 118 head of cattle for $72,359.00.

Defendants have failed to issue payment of any kind for the cattle they purchased in this

transaction; however, they did take possession of the animals and have not returned them.

46.    On November 11, 2022, the Defendants purchased 266 head of cattle for $221,855.75.

Mr. Smith sent check #5201 to pay for this transaction, but the check was returned for

Non-Sufficient funds on February 23, 2023; the check was then run through again and the

Defendants stopped payment on the check on February 27, 2022. Defendants have not

replaced this check or otherwise paid for the cattle they purchased in this transaction;

however, they did take possession of the animals and have not returned them.

47.     On November 18, 2022, Plaintiff sold the Defendants 179 head of cattle for $150,120.38.

Mr. Smith sent check #5248 to pay for this transaction, but the check was returned for

Non-Sufficient funds on February 23, 2023; the check was then run through again and the

Defendants stopped payment on the check on February 27, 2022. However, after

receiving a demand letter from Plaintiff, Defendants issued check #5639 on July 16,

2023, to replace that bad check; this one cleared on July 20, 2023.

48.     On November 22, 2022, Defendants purchased 232 head of cattle from the Plaintiff for

$138,240.00. Defendants have failed to issue payment of any kind for the cattle they

purchased in this transaction; however, they did take possession of the animals and have

not returned them. Defendants took delivery of these cattle at Plaintiff's place of business

in Garnett, Kansas.

49.     On November 23, 2022, Defendants purchased 95 head of cattle from the Plaintiff for

$89,708.25. Defendants took delivery of these cattle at Plaintiff's place of business in

Garnett, Kansas. Mr. Smith wired the requisite funds to pay for this transaction on

December 6, 2022.

50.     On December 2, 2022, Defendants purchased 95 head of cattle from the Plaintiff for

$89,708.25. Defendants have failed to issue payment of any kind for the cattle they

purchased in this transaction; however, they did take possession of the animals and have

not returned them. Defendants took delivery of these cattle at Plaintiff's place of business

in Garnett, Kansas.

51.     On December 4, 2022, the Defendants purchased 162 head of cattle from the Plaintiff for

$143,787.58. Defendants have failed to issue payment of any kind for the cattle they

purchased in this transaction; however, they did take possession of the animals and have not returned them.

52.    Upon the sale of livestock to Defendants on December 4, 2022, Plaintiff determined that it could not make any additional sales to the Defendants until the Defendants had paid their outstanding debt and stopped selling cattle to the Defendants.

53.    This business relationship had come close to ending at different times during the weeks leading up to the termination, but the assurances and strategic payments made by Mr. Smith caused the Plaintiff to believe that Mr. Smith could get caught up on his large debt.

**D.    Misrepresentations by the Defendants.**

54.    The Defendants have been involved in numerous other lawsuits for issues similar to those raised in this case, including some that are currently pending in federal court.

55.    These lawsuits have resulted in millions of dollars in judgments and settlements against the Defendants with millions more at stake in those still pending.

56.    The Defendants were not financially able to settle the debts owed from their past business dealings prior to beginning a business relationship with the Plaintiff.

57.    The Defendants have made numerous misrepresentations to the Plaintiff, including regarding their ability to pay for cattle and whether or not they paid for cattle they had already purchased.

58.    The Plaintiff relied on these representations to initially sell cattle to the Defendants and to continue selling cattle to the Defendants throughout the course of the business relationship.

59.    Defendants also frequently asked the Plaintiff to hold checks.

60. Mr. Smith made repeated assurances that he would pay Plaintiff for the cattle he and his company had purchased.

61. One the Plaintiff ceased selling cattle to the Defendants and informed them that it would not sell it anymore cattle, the Defendants stopped issuing payments to the Plaintiff.

**E.    Payments owed to the Plaintiff.**

62. The Defendants wrote numerous bad checks to the Plaintiff and six (6) of them have still not been replaced. These six checks have a total value of $1,372,876.37.

63. The Plaintiff has never received payment for the cattle associated with the checks in the above table, but the Defendants took possession of the cattle associated with the checks and have not returned any of them.

64. The Defendants also failed to issue payment of any kind for $512,203.18 worth of livestock that the Plaintiff sold to the Defendant.

65. The Defendants took possession of the cattle associated with the unpaid invoices in the above table and have not returned any of them.

66. The combined value of the bad checks and the unpaid invoices amounts to a total of $1,957,438.55 which the Defendants owe the Plaintiff.

67. The Plaintiff made numerous demands, both verbally and through text messages, both during and after the business relationship for payment of all debts owed by the Defendants.

68. On March 13, 2023, the Plaintiff sent the Defendants a written demand for payment, pursuant to K.S.A. § 60-2610. The written demand was sent by first class mail to the

address on the returned checks and included notice of potential damages, amount due, and the date due as required by K.S.A. § 60-2610.

69.    Since that notice, Defendants have made numerous assurances that they would pay the debts owed, but have only sent payment to replace a single bad check referenced in the notice, leaving the six bad checks and the six unpaid invoices mentioned above.

## CONCLUSIONS OF LAW

This Court holds both subject matter and personal jurisdiction in this matter. As a result of the default of the Defendants, personal jurisdiction has been admitted. *See* K.S.A. 60-208. In addition, Defendants have submitted to the jurisdiction of the state of Kansas under K.S.A. 60-308(b) and jurisdiction is permitted by due process requirements. Under the Kansas long arm statute, the Defendants have submitted to jurisdiction because they have:

> (A) Transact[ed] any business in this state;
> (B) commit[ed] a tortious act in this state;
> …
> (E) enter[ed] into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state.

*See* K.S.A. 60-308(b). The Defendants placed orders for cattle with a Kansas entity, purchased cattle from a Kansas entity, took delivery of some of the livestock in Kansas, and mailed checks to the Plaintiff in Kansas. Most of the checks were also deposited with a Kansas bank by the Plaintiff, several of which are at issue here because they were declined for non-sufficient funds and/or payment was stopped by Defendants.

To determine whether the exercise of personal jurisdiction complies with the due process requirements this Court must consider "whether the defendants' conduct and connections with Kansas were such that they should have reasonably anticipated being haled into court here." *Id.*

at 810. As already mentioned above, the Defendants purposely availed themselves of the privilege of conducting activities within the State of Kansas through the business done in this state. Most of the checks written by the Defendants to Plaintiff were deposited with a Kansas bank by the Plaintiff, both those that cleared and those that did not. The act of writing several bad checks to a Kansas entity is enough to satisfy any due process requirements because anyone who writes a bad check should reasonably anticipate being haled into court at the location of the payee of such check. *See National Bank of America at Salina, Salina, Kan. v. Calhoun*, 253 F. Supp. 346, 351 (D. Kan. 1966) (Determining that Kansas Courts had personal jurisdiction over a Nebraska resident who had issued checks to a Kansas resident who deposited them with a Kansas bank because "a Kansas contract was breached when the check was not accepted and paid" by the Nebraska resident's bank and "the defendant's contacts in Kansas were such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.").

Furthermore, "[i]f defendants' actions cause foreseeable injuries in another state, it is 'at the very least, presumptively reasonable for [the defendants] to be called to account for such injuries.'" *Composite Marine Propellers, Inc. v. VanDerWoude*, 741 F. Supp. 873, 877 (D. Kan. 1990) (quoting *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990)). In this case it is foreseeable that Defendants' failure to pay Plaintiff millions of dollars owed for the purchase of livestock already possessed by Defendants would cause injury to Plaintiff in its home state of Kansas. In addition, a look to the "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing" reveals that such jurisdiction is proper. *See Equifax*, 905 F.2d at 1358. "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to

regulation and sanctions in the other State for the consequences of their activities." *Id.* (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, (1985)). Defendants were in frequent

contact with Plaintiff over the months of doing business together, placing orders and negotiating

cattle purchases through text messages and phone calls; there were no intermediaries between

Plaintiff and Defendant. After making calculations to determine what they owed the Plaintiff,

Defendants would send a copy of said calculations to the Plaintiff in Kansas; in most cases, this

exchange would be followed by the mailing of checks (good or bad) or wiring of funds to the

Plaintiff in Kansas where they were deposited with a Kansas bank. Defendant took delivery of

some of the livestock it purchased from Plaintiff at Plaintiff's place of business in Kansas. In

light of these facts, it is evident that the Defendants purposely availed themselves of the privilege

of conducting activities within the State of Kansas. *See id.* ("[W]hen forum contacts are a natural

result of a contractual relationship, it indicates purposeful affiliation with the forum through an

interstate contractual relationship.)

Finally, the assertion of personal jurisdiction is also consistent with traditional notions of

fair play and substantial justice. The Defendants carry the burden of proving that personal

jurisdiction in this case would be unreasonable and they have not presented a reason why

personal jurisdiction would not be had. *See Vestring v. Halla*, 920 F.Supp.2d. 1189, 1195-96 (D.

Kan. 2013) (citation omitted).

### A. Summary Judgment.

"A party claiming relief may move ... for summary judgment on all or part of the claim

... at any time until 30 days after the close of all discovery ... The judgment sought should be

rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits or

declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." K.S.A. 60-256. "Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought." *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985). "An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. The disputed question of fact which is immaterial to the issue does not preclude summary judgment." *Ayalla v. Southridge Presbyterian Church*, 152 P.3d 670, 674 (Kan. Ct. App. 2007) (citations omitted).

In this matter, the Defendants have not presented any issue of material fact, so the Court determines that summary judgment is appropriate.

**B.** **Bad Checks.**

In this case, the Defendants issued six bad checks to the Plaintiff which to date have not been paid. These were issued to Plaintiff as payment for cattle the Defendants purchased from the Plaintiff. The total value of the six worthless checks is $1,372,876.37. Defendants took possession of the cattle for which payment is owed and have not returned any of the animals, nor have Defendants replaced any of these worthless checks.

> If a person gives a worthless check, the person shall be liable to the holder of the check for the amount of the check, the incurred court costs, the incurred service charge, interest at the statutory rate and the costs of collection including but not limited to reasonable attorney fees, plus …[d]amages equal to three times the amount of the check but not exceeding the amount of the check by more than $500.

K.S.A. 60-2610(a). In order to recover under this statute, a Plaintiff must comply with the following:

(1) Not less than 14 days before filing the civil action, the holder of the check made written demand on the maker or drawer for payment of the amount of the check, the incurred service charge and accrued interest; and

(2) the maker or drawer failed to tender to the holder, prior to the filing of the action, an amount not less than the amount demanded.

K.S.A. 60-2610(b); *see also* K.S.A. 60-2611 (allowing a prevailing Plaintiff to recover attorney fees in action to collect on checks).

The Plaintiff complied with the requirements of the statute by issuing a written demand to the Defendants on March 13, 2023. This written demand informed the Defendants of the six worthless checks that they had issued as well as the treble damages and other fees the Defendant could be liable for under K.S.A. 60-2610 if they failed to pay Plaintiff the value of the worthless checks. The written demand also informed the Defendants of the exact amount due and the amount that could be incurred if the demand was not paid by the date specified in the letter. Therefore, the Defendants, Bert E. Smith, IV and Rowdy Livestock, LLC, as the givers of worthless checks, and pursuant to K.S.A. 60-2610, are liable for the value of the six worthless checks, the incurred court costs, the incurred service charges, interest at ten percent (10%) per annum calculated as of March 1, 2024, and damages equal to the value of each check plus an additional $500 per check, a total of $2,911,714.66, as summarized below:

| Interest | | | | | |
|---|---|---|---|---|---|
| Value of Check | Return Date | Days Past Due | Daily Interest Rate | Interest Accrued | |
| $ 209,931.53 | 10/19/22 | 499 | 0.0273973% | $ | 28,700.23 |
| $ 203,982.25 | 11/10/22 | 477 | 0.0273973% | $ | 26,657.41 |
| $ 224,251.98 | 11/23/22 | 464 | 0.0273973% | $ | 28,507.65 |
| $ 319,256.49 | 02/27/23 | 368 | 0.0273973% | $ | 32,188.05 |
| $ 193,598.37 | 11/28/22 | 459 | 0.0273973% | $ | 24,345.66 |
| $ 221,855.75 | 02/27/23 | 368 | 0.0273973% | $ | 22,367.92 |
| | | | | $ | **162,766.92** |

*Order Granting Plaintiff's Motion for Summary Judgment*

| Bad Check Total | |
|---|---|
| Bad Checks | $ 1,372,876.37 |
| Interest | $    162,766.92 |
| Statutory Damages | $ 1,375,876.37 |
| Incurred Court Costs | $       195.00 |
| **Total** | **$ 2,911,714.66** |

### C.      Breach of Contract.

The Parties entered into several oral contracts for the Plaintiff to sell cattle to the
Defendants; in exchange for the cattle they received, Defendants were required to pay Plaintiff
the agreed upon purchase price. The Plaintiff bears the burden of proving a contract exists, but
by failing to answer Plaintiff's complaint, the Defendants in this case have admitted the facts set
forth in the pleadings which allege that contracts existed between the Parties and that Defendants
breached said contracts. *See* K.S.A. 60-208.

In addition, the uncontroverted facts stated above reveal that, by a preponderance of the
evidence, a contract existed between the parties. *See Unified School Dist. No. 446,
Independence, Kansas v. Sandoval*, 286 P.3d 542, 546 (Kan. 2012). "A binding contract typically
entails an offer of terms, an acceptance of those terms, and consideration or a thing of value
passing from each party to the other." *Duling v. Mid American Credit Union*, 530 P.3d 737, 744
(Kan. Ct. App. 2022) (citation omitted). "The parties must each accept the essential terms of the
contract and outwardly communicate that acceptance in a way reasonably intended to be
understood as such." *Id.* (citation omitted) "Kansas contract law defines the assent necessary to
form a contract as a 'meeting of the minds,' i.e., '[a]n unconditional and positive acceptance.'"
*Id.* (quoting *Unified*, 286 P.3d at 546). "Put another way, 'the inquiry will focus not on the

question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract.'" *Sw. & Assocs., Inc. v. Steven Enterprises, LLC*, 88 P.3d 1246, 1249 (Kan. Ct. App. 2004) (quoting 1 Lord, Williston on Contracts § 4:1, p. 241 (1990)).

The terms of the contracts in this case include the sale of livestock to the Defendants by the Plaintiff, in some cases the sale was preceded by an order for specific livestock placed by the Defendants. As consideration for the cattle, Defendants were to pay the Plaintiff an agreed upon amount which varied with each contract according to the type and quantity of livestock therein. The meeting of the minds between the parties is apparent in all of the agreements in this matter. Defendants took possession of the animals for each agreement and in some cases issued bad forms of payment for them. Defendants' taking delivery of the livestock they agreed to purchase was an "outward expression of assent" that showed acceptance of the terms of the contracts and a meeting of the minds. *See Sw. & Assocs.*, 88 P.3d at 1249 (reasoning that the defendant's "outward expressions" of contractual assent resulted in a contract directly between the plaintiff and defendant regardless of any unstated perceptions held by defendant); *Columbia Weighing Mach. Co. v. Vaughan*, 255 P. 973, 974 (Kan. 1927) (concluding that the plaintiff's shipping of a machine ordered by the defendant clearly evinced an intention to accept the offer made by defendant and the offer then became a contract).

In the breached contracts at issue here, the prices for the various groups of cattle purchased by the Defendants are made clear by the sale receipts which accompany each bad check as well as the bad checks themselves. These calculations and the other invoices and sale receipts show the purchase prices that the Defendants agreed to pay in exchange for the cattle

they received. As for the livestock for which no payments were issued, these also have invoices and sale receipts revealing the prices agreed upon for them. The Defendants' failure to pay these agreed upon purchase prices is a breach of the contracts between the Parties. Defendants have not returned any of the cattle. As a result of Defendants' breach of contract, the Plaintiff has suffered a great deal of damages, including the millions of dollars owed to it for the purchase of the cattle, along with interest. Defendants are liable for the value of the payment owed for each of the breached contracts, plus interest at ten percent (10%) per annum calculated as of March 1, 2024, a total of $2,191,340.51, as summarized below:

| Interest | | | | | |
|---|---|---|---|---|---|
| Value of Invoice | Date Due | Days Past Due | Daily Interest Rate | Interest Accrued | |
| $ 70,841.65 | 11/02/22 | 485 | 0.0273973% | $ 9,413.21 | |
| $ 69,907.05 | 11/02/22 | 485 | 0.0273973% | $ 9,289.02 | |
| $ 72,359.00 | 12/09/22 | 448 | 0.0273973% | $ 8,881.32 | |
| $ 138,240.00 | 12/22/22 | 435 | 0.0273973% | $ 16,475.18 | |
| $ 89,426.90 | 01/01/23 | 425 | 0.0273973% | $ 10,412.72 | |
| $ 143,787.58 | 01/03/23 | 423 | 0.0273973% | $ 16,663.60 | |
| | | | | $ **71,135.05** | |

| Total of All Payments Owed | |
|---|---|
| Bad Checks | $ 1,372,876.37 |
| Interest | $ 162,766.92 |
| Unpaid Invoices | $ 584,562.18 |
| Interest | $ 71,135.05 |
| **Total** | **$ 2,191,340.51** |

### D.      Unjust Enrichment.

While it has already been determined that the Defendants breached the contracts in this matter, the Defendants have also been unjustly enriched. "The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto

that which in equity and good conscience belongs to that person." *See id.* at *4 (quoting *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 910 P.2d 839, Syl. ¶ 5 (Kan. 1996)). "In equitable matters [Kansas courts] adhere[] to the rule that no wrong should be suffered without a remedy." *See id.* (quoting *Dougan v. McGrew*, 357 P.2d 319 (Kan. 1960)).

> Unjust enrichment has three elements: "(1) a benefit conferred upon one person by another; (2) an appreciation or knowledge of the benefit received; and (3) the acceptance or retention of the benefit by the individual receiving the benefit under such circumstances as to make it inequitable for the individual to retain the benefit without payment of its value."

*Id.* (quoting *Security Benefit Life Ins. Corp. v. Fleming Companies, Inc.*, 908 P.2d 1315 (Kan. Ct. App. 1995)). Here, the Defendants purchased several groups of cattle from the Plaintiff, but did not pay for them. The Defendants accepted delivery of these cattle acknowledging and accepting the benefits they were receiving. These cattle were worth millions of dollars when the Plaintiff sold them to the Defendants and the Defendants have assumed all of that value without paying anything to the Plaintiff. By taking possession of millions of dollars' worth of cattle without paying for them, the Defendants have been unjustly enriched and it is inequitable for the Defendants to retain this value without compensating the Plaintiff. *See JA-DEL, Inc. v. Winkler*, 432 P.3d 694, 2019 WL 166936, *4 (Kan. Ct. App. 2019) (determining that the defendant had been unjustly enriched by benefitting from the catering at his wedding reception without reasonably compensating the Plaintiff); *Peterson v. Midland Nat. Bank*, 747 P.2d 159, 166-67 (Kan. 1987) (holding that the Plaintiff was entitled to recover the value of the hay he supplied to Defendant's livestock because without that hay the animals would have died, which was a benefit conferred on the Defendant).

As a result of this unjust enrichment, the Defendants owe the Plaintiff the value of the livestock, plus interest at ten percent (10%) per annum, for the cattle purchased by the Defendants, a total of $2,191,340.51, as summarized below:

| Total of All Payments Owed | |
|---|---|
| Bad Checks | $ 1,372,876.37 |
| Interest | $ 162,766.92 |
| Unpaid Invoices | $ 584,562.18 |
| Interest | $ 71,135.05 |
| **Total** | **$ 2,191,340.51** |

**E.      Fraudulent Misrepresentations.**

"Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his injury and damage." *Nordstrom v. Miller*, 605 P.2d 545, 551–52 (Kan. 1980). The Defendants were well aware of the fact that they did not have the necessary funds available to continue purchasing cattle from the Plaintiff. However, the Defendants continued to place orders, make offers for groups of livestock, and take delivery of animals they said they would purchase from the Plaintiff, all while assuring the Plaintiff that they would be able to pay for these animals. The Plaintiff justifiably relied on Defendants' representations regarding their ability to pay for the cattle they were purchasing.

The facts in this case show that the Defendants continually misrepresented their financial situation to the Plaintiff, writing bad checks totaling millions of dollars and continuing to order more cattle even after checks had bounced, all the while asking the Plaintiff to hold on to checks before depositing them because the Defendants knew they would never clear. The Defendants have surely capitalized on the possession of the cattle related to the numerous bad checks they

wrote and the cattle they never paid for because they have likely resold the animals and appreciated the income on livestock for which they never paid. This is a fraudulent misrepresentation under Kansas law.

In addition to the facts in this case which point to Defendants' intent to defraud the Plaintiff, the plethora of other legal actions against Defendants for similar issues reveals that this is not the first time the Defendants have done something like this. The various actions, both those pending and those already adjudicated, underline the fact that the Defendants were deliberately defrauding the Plaintiff in this case. Defendant Bert E. Smith, IV previously conducted business under the entity "B4 Cattle Co." Several lawsuits were brought against Mr. Smith and/or his former entity for breach of contract and failure to pay for livestock amounting to hundreds of thousands of dollars. The judgments and settlements (or at least those known to the Plaintiff) in these lawsuits amounted to over $1.2 million being owed by Mr. Smith and his former entity. Likely as a result of this large debt, both Mr. Smith and B4 Cattle Co. filed for bankruptcy on July 15, 2010.

After those bankruptcy proceedings concluded in 2013 it appears that Mr. Smith created Rowdy Livestock, LLC and continued the same dishonest dealings he was conducting before. Since the initial filing for Rowdy Livestock on March 16, 2016, there have been yet more lawsuits filed against Mr. Smith and Rowdy Livestock for more issues regarding breach of contract and failure to pay for livestock. In one case, OKC West Livestock Market, LLC, an Oklahoma public livestock auction, sold the Defendants in this case 238 steers worth $319,982.64 in July of 2021 and the Defendants failed to pay for the cattle. That matter was resolved when the court granted OKC's motion for summary judgment on July 28, 2022, only

days before the Defendants began business dealings with the Plaintiff in this matter. In the

court's order from the *OKC* case, the court specifically referenced Defendants' response to

discovery which stated, "Defendant intends to pay OKC West for the 238 cattle *when he is*

*financially able.*" *See* Plaintiff's Memorandum at 41. The Defendants had apparently not paid

for those cattle before the July 28, 2022 order on summary judgment, so it must be inferred that

they were not financially able to do so. Yet, despite being financially incapable of paying that

debt at that time (a debt outstanding for over a year), only days later the Defendants started

placing orders and purchasing hundreds of thousands of dollars' worth of cattle from the

Plaintiff in this matter. Upon which, they immediately started writing bad checks to the

Plaintiff. Two other cases have been filed against Mr. Smith and Rowdy livestock in recent

years, one was filed at about the same time as the matter at hand. In those cases, it was alleged

that the Defendants either did not pay for cattle they purchased or that they wrote bad checks to

pay for them. These cases involve over $2 million worth of cattle.

  With these three most recent cases in mind, all of which involve transactions that took

place prior to the Defendants' business relationship with the Plaintiff in this matter, it is

inconceivable to think that the Defendants had anything but fraudulent intentions in this matter.

The Defendants own statements in the OKC matter reveal that they have never had adequate

funds to be conducting business involving the large amounts of cattle and money in the present

dispute, a fact that should have been revealed to the Plaintiff before the business relationship

began. The Defendants' failure to do so fraudulently induced the Plaintiff into doing business

with them, resulting in the Plaintiff suffering damages equal to the value of the livestock plus

interest.

Accordingly, it is determined that the Defendants, Bert E. Smith, IV and Rowdy

Livestock, LLC, committed fraud on the Plaintiff by making fraudulent misrepresentations to the

Plaintiff that induced the Plaintiff into selling the Defendants millions of dollars' worth of cattle

for which they have not paid. As a result of this fraud, the Defendants are liable for the entirety

of the judgment in this matter, including the value of all of the payments owed to the Plaintiff,

with interest of ten percent (10%) per annum, and all statutory damages and fees awarded under

K.S.A. 60-2610, a total of $3,567,411.88, plus attorney fees.

| | |
|---|---|
| Bad Checks | $ 1,372,876.37 |
| Interest | $ 162,766.92 |
| Unpaid Invoices | $ 584,562.18 |
| Interest | $ 71,135.05 |
| Sub-Total | $ 2,191,340.51 |
| | |
| Statutory Damages | $ 1,375,876.37 |
| Incurred Court Costs | $ 195.00 |
| Sub-Total | $ 1,376,071.37 |
| | |
| **Total** | **$ 3,567,411.88** |

F.    **Personal Liability of Bert Smith for Fraudulent Misrepresentations.**

Regardless of whether a corporate veil can be pierced, Kansas law holds corporate

officers personally liable for wrongful actions of a corporation in situations where the corporate

officer "willfully participated in acts of fraud and deceit." *See State ex. rel. Stephan v.*

*Commemorative Serv. Corp.*, 823 P.2d 831, 840 (Kan. Ct. App. 1991) ("This liability does not

depend upon piercing the corporate veil or upon the application of any alter ego theory."). "A

corporate officer or director, actively participating in the fraud practiced on behalf of a

corporation, cannot escape personal liability on the ground that he was acting for the corporation

or that the corporation obtained the benefit therefrom." *Amoco Chemicals Corp. v. Bach*, 567 P.2d 1337, 1342 (Kan. 1977).

In this case, Defendant Bert E. Smith, IV is the only member of Rowdy Livestock, LLC and the only known manager of the company. He was personally conducting all business with the Plaintiff on behalf of Rowdy Livestock. In addition, Mr. Smith signed all checks in this case, both good and bad, and initiated all wire transfers. Mr. Smith was well aware of the financial situation of his company, as discussed in the previous section, yet he purchased millions of dollars of cattle from the Plaintiff that he knew he could not afford. Throughout the entire business relationship Mr. Smith blatantly lied to the Plaintiff about its ability to pay for cattle he was purchasing and about whether he had actually paid for numerous groups of cattle. These lies and misrepresentations induced the Plaintiff into doing business with Mr. Smith and Rowdy Livestock and resulted in Mr. Smith or his entity taking possession of thousands of head of cattle for which they never paid. The fraudulent misrepresentations made by Mr. Smith are the root cause for each and every claim in this case. Accordingly, it is determined that Defendant, Bert E. Smith, IV, committed fraud on the Plaintiff by making fraudulent misrepresentations to the Plaintiff that induced the Plaintiff into selling the Defendants millions of dollars' worth of cattle for which they have not paid. As a result of Mr. Smith's willful participation in acts of fraud and deceit when purchasing cattle on behalf of Rowdy Livestock, LLC, Mr. Smith is personally liable for the debts of Rowdy Livestock, including the entirety of the judgment in this matter, including the value of all of the payments owed to the Plaintiff, with interest of ten percent (10%) per annum and all statutory damages and fees awarded under K.S.A. 60-2610, a total of $3,567,411.88, plus attorney fees.

| | |
|---|---|
| Bad Checks | $ 1,372,876.37 |
| Interest | $ 162,766.92 |
| Unpaid Invoices | $ 584,562.18 |
| Interest | $ 71,135.05 |
| Sub-Total | $ 2,191,340.51 |
| | |
| Statutory Damages | $ 1,375,876.37 |
| Incurred Court Costs | $ 195.00 |
| Sub-Total | $ 1,376,071.37 |
| | |
| **Total** | **$ 3,567,411.88** |

**G.    Corporate Veil.**

The corporate entity may be disregarded where it is used as a cloak or cover for fraud or illegality, or to work an injustice, or where necessary to achieve equity. When the corporation is the mere alter ego or business conduit of a person, the corporate fiction may be disregarded in the interest of securing a just determination of rights and liabilities.

The doctrine of alter ego fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his own personal business, such liability arising from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation. Under it the court merely disregards corporate entity and holds the individual responsible for his acts knowingly and intentionally done in the name of the corporation.

*Amoco Chemicals Corp. v. Bach*, 567 P.2d 1337, 1341 (Kan. 1977) (quoting *Kilpatrick Bros.,*

*Inc. v. Poynter*, 473 P.2d 33, Syl. ¶¶ 4, 5 (Kan. 1970); *see also Kvassay v. Murray*, 808 P.2d 896,

898 (Kan. Ct. App. 1991) ("While the power to pierce the corporate veil is to be exercised

reluctantly and cautiously, the corporate entity can be disregarded if it is used to cover fraud or to

work injustice, or if necessary to achieve equity."). In determining whether a corporate entity

may be disregarded, the *Amoco* Court also stated "[m]ere single ownership of a corporation may

tend to generate suspicion regarding interrelated activities involving third parties but single

ownership alone will not support the alter ego theory and justify a disregard of the corporate

entity." *Id.* at 1341. However, the Court did determine that the following factors are significant:

> (1) Undercapitalization of a one-man corporation, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) the use of the corporate entity in promoting injustice or fraud.

*See id.* at 1341-42. As a result of the Defendants' default in this case, no discovery has been

made, so it is difficult to determine whether some of the above factors are met. However, "[n]ot

all of the factors must be present, and the presence of any one factor could be enough to justify

disregarding the corporate entity." *Louisburg Bldg. & Dev. Co. v. Albright*, 252 P.3d 597, 609

(Kan. Ct. App. 2011) (citation omitted) (discussing the same factors from the *Amoco* case).

The most obvious factor in this case, which can likely justify piercing the corporate veil

on its own, is "(8) the use of the corporate entity in promoting injustice or fraud." As already

discussed, Mr. Smith fraudulently induced the Plaintiff into doing business with him and his

company. As part of this fraud, the first factor is also satisfied because Rowdy Livestock, LLC

was undercapitalized from the beginning of its relationship with the Plaintiff. The Defendants'

own admission in a previous lawsuit revealed that it was not able to pay its $300,000 debt to a

sale barn in Oklahoma mere days before the Defendants began doing business with the Plaintiff,

so it follows that the Defendants would not be able to cover the purchases they made from the

Plaintiff. *See* Exhibit 53 at 2 ("Defendant intends to pay OKC West for the 238 cattle when he is

financially able."). The numerous bounced checks in this case also show that the one-man

company was undercapitalized throughout the entire business relationship. Mr. Smith's behavior

has also revealed that Rowdy Livestock's buying and selling of livestock is a mere façade for his

personal business (factor seven). Mr. Smith is the only member of the company, he makes all management decisions, controls all assets of the LLC, and conducts all business from his personal property. All business operations are for his personal benefit.

In addition to the factors above, "[a] corporate entity may also be disregarded upon a general showing that the interests of justice require it." *Louisburg*, 252 P.3d at 610 (citing *Kilpatrick Bros.*, 473 P.2d at Syl. ¶ 4); *see also Hill v. Kansas Dep't of Lab., Div. of Workers Comp.*, 210 P.3d 647, 660 (Kan. Ct. App. 2009), *aff'd in part, rev'd in part on other grounds*, 248 P.3d 1287 (2011) ("Kansas law recognizes two theories under which the corporate entity may be disregarded: (1) the alter ego theory and (2) the interest of justice theory."). "Even under the interests-of-justice theory, there must be some showing that it would be inequitable or unjust to uphold the legal fiction of separate entities." *Id.* "[A] fraud or injustice committed by a corporation ordinarily will be remedied by the penalties that the law assesses against that corporation as a remedy. It is the corporation's inability or unwillingness to comply with those remedies that prompts disregarding the corporate entity." *Id.* (citation omitted).

In this case, the relief sought by the Plaintiff is payment for the cattle that the Defendants purchased, as well as damages related to these purchases. A logical remedy for this issue would be to have Defendant Rowdy Livestock, LLC pay for these cattle. However, due to the gross undercapitalization of the company by Defendant Bert E. Smith, IV, the company already has six bad checks outstanding in this matter, so it is unbelievable to think that the company could ever afford to pay such a judgment. This outcome would be completely unjust and inequitable. Another option would be for Rowdy Livestock to return all of the cattle for which it has not paid to the Plaintiff. Unfortunately, as stated in the facts, due to the normal lifecycle of the type of

cattle involved in this matter and the progression of the type of business conducted by the Defendants, it is almost certain that all of the cattle here have already been resold into the beef supply chain. This means that it would be impossible for the cattle to be returned. No other penalties are likely to be assessed by law against the corporation that would remedy the Plaintiff's situation in this matter. *See Louisburg*, 252 P.3d at 610. As a result, the only equitable and just remedy is for this Court to pierce the corporate veil and hold Mr. Smith personally liable for the debts of his company, debts that he himself created.

This court hereby determines that the corporate veil of Defendant, Rowdy Livestock, LLC, may be pierced, resulting in Defendants, Bert E. Smith, IV and Rowdy Livestock, LLC, being held jointly and severally liable for the entirety of the judgment in this matter, including the value of all of the payments owed to the Plaintiff, with interest of ten percent (10%) per annum, and all statutory damages and fees awarded under K.S.A. 60-2610, a total of $3,567,411.88, plus attorney fees.

| Bad Checks | $ 1,372,876.37 |
|---|---|
| Interest | $ 162,766.92 |
| Unpaid Invoices | $ 584,562.18 |
| Interest | $ 71,135.05 |
| Sub-Total | $ 2,191,340.51 |
| | |
| Statutory Damages | $ 1,375,876.37 |
| Incurred Court Costs | $ 195.00 |
| Sub-Total | $ 1,376,071.37 |
| | |
| **Total** | **$ 3,567,411.88** |

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.     That the Plaintiff's Motion for Default Judgment is hereby GRANTED.

2.     Plaintiff is hereby awarded a total of $3,567,411.88.

3.     As part of this judgment, this Court acknowledges that the Plaintiff is entitled to an award of reasonable attorney fees. The Plaintiff is hereby granted leave to file a motion for attorney fees within 30 days of the issuance of this order.


IT IS SO ORDERED this ___ day of _____ 2024.



_____
HON. ERIC W. GODDERZ
DISTRICT COURT JUDGE

# Exhibit B



| | |
|---|---|
| **Court:** | Anderson County District Court |
| **Case Number:** | AN-2023-CV-300001 |
| **Case Title:** | Ron Ratliff Cattle Co., INc. vs. Burt E Smith, IV & Rowdy Livestock, LLC |
| **Type:** | ORD: Order (Generic) Order Awarding Attorney Fees to Plaintiff |

SO ORDERED,

_____
/s/ Honorable Eric Godderz, District
Court Judge

Electronically signed on 2024-07-10 16:01:55          page 1 of 4

IN THE FOURTH JUDICIAL DISTRICT
DISTRICT COURT, ANDERSON COUNTY, KANSAS

| | |
|---|---|
| RON RATLIFF CATTLE CO., INC,<br>a Kansas for profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>BERT E. SMITH, IV, as an individual<br>and as a member of ROWDY<br>LIVESTOCK, LLC, and<br>ROWDY LIVESTOCK, LLC,<br>a Tennessee limited liability company,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. AN-2023-CV-300001 |

---

**ORDER AWARDING ATTORNEY FEES TO PLAINTIFF**

---

THIS MATTER having come before the Court through *Plaintiff's Motion for Attorney Fees*, and the exhibits in support thereof, and the Court being fully advised in the premises, finds and orders the following:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that for good cause shown, the *Plaintiff's Motion for Attorney Fees* is hereby GRANTED. It is specifically ORDERED AND DECREED that

1.      On March 28, 2024, this Court entered judgment against the Defendants, Bert Smith, IV and Rowdy Livestock, LLC, jointly and severally liable for the amount of $3,567,411.88, plus attorney fees.

1

2.      In the judgment issued in this matter, this Court acknowledged that the Plaintiff is entitled to the reasonable award of attorney fees pursuant to K.S.A. 60-2610 and K.S.A. 60-2611.

3.      Accordingly, the Plaintiff is awarded attorney fees in the amount of $59,669.00.

4.      The Court has reviewed the Plaintiff's motion and the supporting exhibits, including the affidavit submitted by Plaintiff's counsel of the work performed in this case, the time spent performing that work, and the hourly rates, and finds the award of $59,669.00 to be reasonable.

5.      This Court finds that the Plaintiff's counsel reasonably spent 200.50 hours (attorney + paralegal) representing the Plaintiff's interests through this litigation and finds counsel's hourly rate to be reasonable and in line with the prevailing rates in the community for litigation of this kind.

6.      The Court finds that no other factors of discretionary application should be considered to adjust the fee either upward or downward.

7.      The Court also awards $7,471.27 for the reasonable expenses that were incurred along with the attorney fees.

8.      The Court finds these expenses to be reasonable and necessary expenses.

9.      Accordingly, the Court approves the fees and expenses incurred by the Plaintiff in this matter and awards attorney fees and expenses to Ron Ratliff Cattle Co., Inc. in the amount of $67,140.27. This Court also grants leave to the Plaintiff to file a later motion for attorney fees yet to be incurred in pursuit of said collection.

IT IS SO ORDERED

2

DATED this _____ day of _____ 2024.

_____
HON. ERIC W. GODDERZ
DISTRICT COURT JUDGE

# Exhibit C

IN THE CIRCUIT COURT FOR MARSHALL COUNTY, TENNESSEE
THE SEVENTEENTH JUDICIAL DISTRICT, PART II, AT LEWISBURG

RON RATLIFF CATTLE CO., INC.,
a Kansas for profit corporation,
    Plaintiff,

v.                                                                                      Case No.: 2024-CV-52

BERT E. SMITH, IV, as individual and
as a member of ROWDY LIVESTOCK,
LLC, a Tennessee Limited Liability
Company,

    Defendants.

2025 JAN 21 PH 1:50
FILED
MARSHALL COUNTY CIRCUIT
MIKE WILES, CLERK

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT

---

This cause came to be heard on the 5th day of December 2024, upon the Motion for

Summary Judgment (the "Motion") filed by RON RATLIFF CATTLE CO, INC. ("Plaintiff").

After consideration of the Motion and filings in support and in opposition thereto, and after

hearing arguments from counsel, the Court finds that the Plaintiff's Motion for Summary

Judgment should be **GRANTED**. The Court makes the following findings of fact and

conclusions of law in support of its ruling:

### I.    BACKGROUND

This lawsuit arises out of a Proceeding To Enforce Judgment against Rowdy Livestock,

LLC and Bert E. Smith, IV. There was no dispute by Defendants to any of the Plaintiff's

Statements of Undisputed [material] Facts. An Order, which has not been appealed or set aside,

was issued by the Anderson County District Court in Kansas against Defendants in the amount

of $3,567,411.88. An additional Order was issued by the Anderson County District Court in

Kansas against Defendants in the amount of $67,140.27 for reasonable attorney's fees.

Defendants were properly served summons for Enforcement of Foreign Judgment in Tennessee on May 31, 2024, by personal service.

## II. LAW AND ANALYSIS

### A. Standard of Review – Summary Judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Far from a disfavored procedural shortcut, summary judgment remains an important vehicle for concluding cases that can and should be resolved on legal issues alone. *Osunde v. Delta Medical Center*, 505 S.W.3d 875, 879 (Tenn. Ct. App. 2016). When the party makes a properly supported motion, the burden shifts to the nonmoving party to set forth disputed facts for trial by using affidavits or the discovery material listed in Rule 56.03. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015).

The nonmoving party may not rely upon the allegations or denials in his pleadings and must do more than simply show that there is "some metaphysical doubt" as to the material facts. *Id.* The focus is on evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that could be adduced at trial. *Id.* Drawing all inferences in favor of the nonmoving party, summary judgment should be granted if the nonmoving party's evidence is insufficient to establish the existence of a genuine issue of material fact for trial. *Id.*

The summary judgment standard is now also addressed by statute. Tenn. Code Ann. §20-16-101 reads as follows:

In motions for summary judgment in any civil action in Tennessee, the moving party who

2

does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. §20-16-101.

A mere scintilla of evidence in support of a non-party's position is insufficient to defeat an otherwise proper motion for summary judgment. *Byrd v. Hall*, 847 S.W.2d 208, 212 (Tenn.1993). "[D]isputes of material fact are 'genuine' - and therefore preclude the entry of summary judgment - only if the evidence produced at the summary judgment stage is "such that a reasonable jury could return a verdict for the nonmoving party." *Rye v. Women's Care Ctr. of Memphis, PLLC*, 477 S.W.3d 235, 251 (Tenn. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "[i]f the Defendants in a run-of-the-mill civil case move for summary judgment ... based on lack of proof of material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the Plaintiff on the evidence presented." *Id*. at 252 (quoting *Anderson*, 477 U.S. at 252). The non-moving party must demonstrate the existence of specific facts in the record - not "hypothetical evidence that theoretically could be adduced" - in order to survive summary judgment. *Id*. at 265. Summary judgment is not appropriate unless both the facts and inferences therefrom "permit a reasonable person to reach only one conclusion." *Staples v. CBL Assoc., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

### B. Analysis

1.      There are no material facts in dispute.

3

2.      All three factors to enforce a foreign judgment are in favor of enforcing the judgment.

      a.      The Defendants have waived any argument regarding a void judgment in Kansas by withdrawing their Motion to Set Aside Void Judgment which was withdrawn by and through Defendants' counsel. Thus, the Kansas Judgment became a final judgment subject to enrollment for enforcement.

      b.      Defendants have not argued that the judgment is based on fraud.

      c.      There is no violation of the public policy of Tennessee by enforcing this judgment.

3.      It is the Defendants' burden to overcome entry of a foreign judgment and that has not been overcome.

Accordingly, Plaintiff's Motion for Summary Judgment is hereby **GRANTED**. This shall be deemed a Final Order.

**IT IS SO ORDERED**.

This the 20 day of January 2025.

_____
M. Wyatt Burk, Judge
Circuit Court, Part II

4

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and exact copy of this Order has been served on all parties at interest in this cause via U.S. mail, postage prepaid, to the following individuals:

1.  Sonya S. Wright
    SMITH-WRIGHT LAW, PLLC
    122 North Church Street
    Murfreesboro, TN 37130
    Telephone: (615) 800-4747
    Facsimile: (615) 900-3473
    sonya@smithwrightlaw.com

    John A. Barney
    503 Prince of Wales Ct.
    Franklin, TN 37064

This the 21st day of January, 2025.

*Mike Wiles*

Marshall County Circuit Court Clerk/Deputy

5

# IN THE CIRCUIT COURT FOR MARSHALL COUNTY, TENNESSEE
## THE SEVENTEENTH JUDICIAL DISTRICT, PART II, AT LEWISBURG

**RON RATLIFF CATTLE CO., INC.,**
**a Kansas for profit corporation,**

        **Plaintiff,**

**v.**

**BERT E. SMITH, IV, as individual and**
**as a member of ROWDY LIVESTOCK,**
**LLC, and ROWDY LIVESTOCK, LLC,**
**a Tennessee Limited Liability Company,**

        **Defendants.**

**Case No.:  2024-CV-52**



---

## AMENDED ORDER ON MOTION FOR SUMMARY JUDGMENT[1]

---

This cause came to be heard on the 5th day of December 2024, upon the Motion for

Summary Judgment (the "Motion") filed by RON RATLIFF CATTLE CO, INC. ("Plaintiff").

After consideration of the Motion and filings in support and in opposition thereto, and after

hearing arguments from counsel, the Court finds that the Plaintiff's Motion for Summary

Judgment should be **GRANTED**.  The Court makes the following findings of fact and

conclusions of law in support of its ruling:

### I.      BACKGROUND

This lawsuit arises out of a Proceeding To Enforce Judgment Against Rowdy Livestock,

LLC and Bert E. Smith, IV.  There was no dispute by Defendants to any of the Plaintiff's

Statements of Undisputed [material] Facts.  An Order, which has not been appealed or set aside,

---

[1] This Amended Order on Motion for Summary Judgment is being entered to correct a <u>clerical error</u> within the style of the case on the face of the Order on Motion for Summary Judgment entered on January 21, 2025.  Rowdy Livestock, LLC was inadvertently omitted from said Order.  The entry of this Order shall in no way be interpreted as altering the entry date of said Order.

was issued by the Anderson County District Court in Kansas against Defendants in the amount of $3,567,411.88. An additional Order was issued by the Anderson County District Court in Kansas against Defendants in the amount of $67,140.27 for reasonable attorney's fees. Defendants were properly served summons for Enforcement of Foreign Judgment in Tennessee on May 31, 2024, by personal service.

## II.     LAW AND ANALYSIS

### A. Standard of Review – Summary Judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Far from a disfavored procedural shortcut, summary judgment remains an important vehicle for concluding cases that can and should be resolved on legal issues alone. *Osunde v. Delta Medical Center*, 505 S.W.3d 875, 879 (Tenn. Ct. App. 2016). When the party makes a properly supported motion, the burden shifts to the nonmoving party to set forth disputed facts for trial by using affidavits or the discovery material listed in Rule 56.03. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015).

The nonmoving party may not rely upon the allegations or denials in his pleadings and must do more than simply show that there is "some metaphysical doubt" as to the material facts. *Id.* The focus is on evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that could be adduced at trial. *Id.* Drawing all inferences in favor of the nonmoving party, summary judgment should be granted if the nonmoving party's evidence is insufficient to establish the existence of a genuine issue of material fact for trial. *Id.*

2

The summary judgment standard is now also addressed by statute. Tenn. Code Ann. §20-16-101 reads as follows:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. §20-16-101.

A mere scintilla of evidence in support of a non-party's position is insufficient to defeat an otherwise proper motion for summary judgment. *Byrd v. Hall*, 847 S.W.2d 208, 212 (Tenn.1993). "[D]isputes of material fact are 'genuine' - and therefore preclude the entry of summary judgment - only if the evidence produced at the summary judgment stage is "such that a reasonable jury could return a verdict for the nonmoving party." *Rye v. Women's Care Ctr. of Memphis, PLLC*, 477 S.W.3d 235, 251 (Tenn. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "[i]f the Defendants in a run-of-the-mill civil case move for summary judgment ... based on lack of proof of material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the Plaintiff on the evidence presented." *Id*. at 252 (quoting *Anderson*, 477 U.S. at 252). The non-moving party must demonstrate the existence of specific facts in the record - not "hypothetical evidence that theoretically could be adduced" - in order to survive summary judgment. *Id*. at 265. Summary judgment is not appropriate unless both the facts and inferences therefrom "permit a reasonable person to reach only one

conclusion." *Staples v. CBL Assoc., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

## B. Analysis

1.      There are no material facts in dispute.

2.      All three factors to enforce a foreign judgment are in favor of enforcing the judgment.

a.      The Defendants have waived any argument regarding a void judgment in Kansas by withdrawing their Motion to Set Aside Void Judgment which was withdrawn by and through Defendants' counsel.  Thus, the Kansas Judgment became a final judgment subject to enrollment for enforcement.

b.      Defendants have not argued that the judgment is based on fraud.

c.      There is no violation of the public policy of Tennessee by enforcing this judgment.

3.      It is the Defendants' burden to overcome entry of a foreign judgment and that has not been overcome.

Accordingly, Plaintiff's Motion for Summary Judgment is hereby **GRANTED**.  This shall be deemed a Final Order.

**IT IS SO ORDERED**.

This the __14__ day of April 2025.

*NUNC PRO TUNC JANUARY 21, 2025.*

_____
M. Wyatt Burk, Judge
Circuit Court, Part II

4

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that a true and exact copy of this Order has been served on all parties at interest in this cause via U.S. mail, postage prepaid, to the following individuals:

1.      Sonya S. Wright
        SMITH-WRIGHT LAW, PLLC
        122 North Church Street
        Murfreesboro, TN 37130
        Telephone: (615) 800-4747
        Facsimile: (615) 900-3473
        sonya@smithwrightlaw.com

        John A. Barney
        503 Prince of Wales Ct.
        Franklin, TN 37064

This the _14_ day of April 2025.

_____
Marshall County Circuit Court ~~Clerk~~/Deputy